Argued and submitted June 24, reversed and remanded
for reconsideration November 30, 1983

In the Matter of the Compensation of
Leon Cowart, Claimant.

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner,*

*v.*

COWART,
*Respondent.*

(CA A26834)

672 P2d 389

Donna M. Parton, Associate Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the briefs for petitioner.

Willard E. Merkel, Portland, argued the cause for respondent. With him on the brief were Gary M. Galton, and Galton, Popick & Scott, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

The State Accident Insurance Fund (SAIF) appeals from a "third party settlement" order of the Workers' Compensation Board that permitted allocation of $15,000 of a $65,000 settlement of claimant's action against a third-party tortfeasor to claimant's wife for her claim for loss of consortium. We reverse.

In June, 1981, claimant was injured in a motor vehicle accident while temporarily in California in the course and scope of his employment. He filed a workers' compensation claim and also elected to pursue his third-party cause of action against the California tortfeasors. ORS 656.154. SAIF was claimant's employer's insurer. It associated a California attorney to represent its interest in its statutory right to a lien against claimant's recovery. *See* ORS 656.593(1).

Claimant and his wife filed a complaint in California, alleging two causes of action, one for personal injury and wage loss to claimant and the other for loss of consortium to claimant's wife. In August, 1982, claimant and his wife agreed to settle their tort actions for $65,000, the policy limits of the defendants' liability insurance. Information of that settlement apparently was related orally to SAIF's California attorney, Lambert. On August 27, 1982, Lambert wrote a confirming letter to claimant's California attorney, Ginsburg, acknowledging Ginsburg's "communication of August 24, 1982, advising of settlement of Mr. Cowart's third party lawsuit arising out of the subject motor vehicle accident for * * * $65,000." In that letter, Lambert advised that SAIF had been apprised of the settlement and had approved it. SAIF approved the settlement in writing on September 7, 1982. On September 17, Ginsburg wrote to Lambert, advising that he was allocating $15,000 of the settlement to claimant's wife's claim for loss of consortium. On September 21, Lambert advised that that allocation was unacceptable, because SAIF's initial approval of the settlement was based on the understanding that Mr. Cowart's recovery was $65,000. SAIF's total costs for benefits already paid and anticipated future benefits exceeded that amount.

Both parties requested the Board to determine a just and proper distribution of the proceeds of the settlement,

pursuant to the Board's authority under ORS 656.593(3).[1] The Board concluded that the matter was more accurately a dispute between claimant and SAIF regarding the compromise of claimant's action against the third parties, which the Board had authority to approve under ORS 656.587.[2] It treated the proceeding as one arising on a petition by claimant requesting the Board to approve settlement of his cause of action against the third-party tortfeasor which had been negotiated with the third parties' insurers and which SAIF had refused to approve because of a disagreement with claimant's proposed apportionment of the proceeds. The Board found that the proposed settlement of $50,000 for claimant's third-party action was reasonable and approved the settlement for that amount. SAIF appeals.

■        SAIF first contends that the Board lacked authority under ORS 656.587 to modify the parties' prior agreement that claimant's claim would be settled for $65,000. It also contends that distribution of $15,000 of claimant's settlement proceeds to claimant's wife, a party outside the workers' compensation system, is not authorized by statute. We separately discuss these contentions.

When there is a dispute between a claimant and an employer or the employer's insurer regarding the appropriateness of a proposed settlement of a third-party action, the Board may order approval of the settlement. ORS 656.587. Although the Board treated this proceeding as a disputed settlement, we do not agree with that characterization. Unfortunately, the record does not contain all of the communications between the parties, but we are able to discern from what

---

[1] ORS 656.593(3) provides:

"(3) A claimant may settle any third party case with the approval of the paying agency, in which event the paying agency is authorized to accept such a share of the proceeds as may be just and proper and the worker or the beneficiaries of the worker shall receive the amount to which the worker would be entitled for a recovery under subsections (1) and (2) of this section. Any conflict as to what may be a just and proper distribution shall be resolved by the board."

[2] ORS 656.587 provides:

"Any compromise by the worker or other beneficiaries or the legal representative of the deceased worker of any right of action against an employer or third party is void unless made with the written approval of the paying agency or, in the event of a dispute between the parties, by order of the board. ORS 656.236 does not apply to compromises and settlements under ORS 656.578 to 656.597."

there is that there was no dispute as to the amount of the settlement for claimant's cause of action when SAIF's approval of the settlement was sought or when SAIF gave its express written approval. SAIF's letter of August 27, 1982, acknowledged claimant's communication of a proposed settlement of "Mr. Cowart's" claim for $65,000. SAIF's formal approval letter of September 7, 1982, although referring to the matter of "Leon Cowart, et al," outlined a proposed distribution of the settlement proceeds consistent with an understanding that *claimant's* recovery was $65,000.[3] Ginsburg's letter of September 17, 1982, announcing that he was allocating $15,000 of the settlement to claimant's wife's claim, was the first indication to SAIF that any of the $65,000 was to be so applied, and that letter contains an acknowledgement that previous discussions did not include her claim. Its injection into the terms of the settlement appears to have been prompted by belated discussions between claimant's California and Oregon attorneys. A letter, also dated September 17, 1982, signed by Ginsburg and addressed to claimant's Oregon attorney, states:

> "I am very glad * * * you thought of this phase of the settlement. Mrs. Cowart, in my opinion, is entitled to a share of the settlement. I feel sure that if this case had gone to a trial the court, or jury, would have awarded her a portion of the total damages. Naturally, we cannot know at this time what amount it would be, but in view of the considerable injury to her husband, she could make out a strong case for a substantial award in her favor.

> "While it is true that heretofore all discussions have been concerned with Leon's share of the total recovery of

---

[3] In his brief, claimant takes the position that, because SAIF's letter of approval refers to the case as "Leon Cowart, et al," SAIF was giving its consent to settlement of the entire action and that it follows that the dispute over allocation of part of the settlement proceeds to Mrs. Cowart's claim for loss of consortium had existed from the beginning. We find that argument unpersuasive. A paying agency's statutory power to approve a settlement is limited to a settlement resulting from third-party actions brought by the worker or other beneficiary. A "beneficiary" is a person entitled to receive payments under the workers' compensation laws. ORS 656.005(3). Obviously, claimant's wife is not a beneficiary for purposes of ORS 656.587, because she would not be entitled under the workers' compensation laws to payment for loss of consortium. Therefore, there was no reason for claimant to seek SAIF's approval of a compromise of her cause of action; SAIF had no statutory right to approve or disapprove settlement of that claim. Claimant's request that SAIF approve the $65,000 settlement, therefore, indicates that claimant also originally considered the entire amount attributable only to his cause of action.

$65,000.00, that has been due to our oversight of the right of Mrs. Cowart to a part of the settlement. Whether SAIF will agree to $15,000, or to some other amount, will, of course, remain to be seen."

Although claimant's attorneys may have overlooked Mrs. Cowart's right to a part of the settlement when negotiating with SAIF for its approval, SAIF was entitled to rely on claimant's initial representation that the entire settlement was for his cause of action. Clearly, the parties agreed to a settlement of claimant's cause of action for $65,000; he thereafter attempted to change the agreement. Separate provision could have been made for claimant's wife's claim for loss of consortium prior to the time claimant sought SAIF's approval of the settlement, but it was not. Claimant's unilateral decision that $15,000 of the proceeds be allocated to her claim came too late. Under those circumstances, the Board was without authority under ORS 656.587 to restructure the parties' actual agreement to settle claimant's cause of action for $65,000 so as to permit recognition of claimant's wife's claim for loss of consortium. Consequently, the Board lacked authority to exercise any judgment regarding any settlement of claimant's cause of action against the third party for $50,000.

■ We turn now to what the Board could do. SAIF's second contention focuses on the provisions of ORS 656.593, which establishes the distribution scheme for proceeds of third-party-damage actions.[4] It argues that the statutory

---

[4] ORS 656.593(1) provides:

"(1) If the worker or the beneficiaries of the worker elect to recover damages from the employer or third person, notice of such election shall be given the paying agency by personal service or by registered or certified mail. The paying agency likewise shall be given notice of the name of the court in which such action is brought, and a return showing service of such notice on the paying agency shall be filed with the clerk of the court but shall not be a part of the record except to give notice to the defendant of the lien of the paying agency, as provided in this section. The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"(a) Costs and attorney fees incurred shall be paid, such attorney fees in no event to exceed the advisory schedule of fees established by the board for such actions.

"(b) The worker or the beneficiaries of the worker shall receive at least 33-1/3 percent of the balance of such recovery.

scheme does not authorize distribution of any portion of a claimant's recovery to a party who, like claimant's wife, has a separate claim outside the workers' compensation system.[5] We agree.

Reversed and remanded for reconsideration.

---

"(c) The paying agency shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation, first aid or other medical, surgical or hospital service, and for the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim under ORS 656.001 to 656.794. Such other costs include assessments for reserves in the Administrative Fund and any reimbursements made pursuant to ORS 656.728(3), but do not include any compensation which may become payable under ORS 656.273 or 656.278.

"(d) The balance of the recovery shall be paid to the worker or the beneficiaries of the worker forthwith. Any conflict as to the amount of the balance which may be retained by the paying agency shall be resolved by the board.

[5] As noted in n 3, *supra*, claimant's wife is not a "beneficiary," because she is not entitled under the workers' compensation laws to benefits for loss of consortium.